UNITED STATES BANKRUPTCY COURT **FILED**
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION     OCT 1 9 2010

In re:                                 CLERK U.S. BANKRUPTCY,
                                      ORLANDO DIVISION

PAUL OSBORNE and                Case No. 6:09-bk-07645-ABB
DONNA OSBORNE,                 Chapter 7

       Debtors.

_____/

BLAKE BARNETT and
GABRIELLA BARNETT,

       Plaintiffs,                      Adv. Pro. No. 6:09-ap-00848-ABB

vs.

PAUL OSBORNE and
DONNA OSBORNE,

       Defendants.

_____/

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Adversary Complaint Objecting to the Dischargeability of a Debt ("Complaint") (Doc. No. 1) filed by the Plaintiffs Blake Barnett and Gabriella Barnett (collectively, "Plaintiffs") against the *pro se* Defendants/Debtors Paul Osborne and Donna Osborne (collectively, "Debtors") seeking: (i) a non-dischargeability determination pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(2)(C); and (ii) relief from the automatic stay of 11 U.S.C. Section 362(a) to pursue a Florida State Court civil action against the Debtors.

Evidentiary hearings were held on April 22, 2010 and August 26, 2010 at which Plaintiffs and their counsel appeared. Debtors filed a Motion to Dismiss (Doc. No. 11),

which was denied by the Order entered on January 13, 2010 (Doc. No. 18), but they did not file any other pleadings or appear at any hearings.

Judgment is due to be entered in favor of Plaintiffs and against the Debtors pursuant to 11 U.S.C. Section 523(a)(2)(A) for the reasons set forth herein. Plaintiffs' motion for stay relief is due to be granted in part. The Court makes the following findings and conclusions after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

### Clermont Property Purchase

Plaintiffs are a young married couple who purchased their single-family home located at 7151 County Road S. 561A, Clermont, Lake County, Florida ("Property") from the Debtors in 2005. Plaintiffs are inexperienced with real estate transactions; their purchase of the Property was their first real property purchase.

Plaintiffs purchased the Property from the Debtors for $155,000.00 pursuant to a Contract for Sale and Purchase executed by Plaintiffs on September 6, 2005 and the Debtors on September 7, 2005 ("Sale Contract").[1] The Debtors executed a Seller's Real Property Disclosure Statement ("Disclosure Statement") on May 3, 2005 in connection with their listing agreement with their broker Exit Realty of Lakeland.[2] Plaintiffs executed the Disclosure Statement on September 6, 2005.

Plaintiffs engaged Atkinson Inspection Services, Inc. ("Atkinson") to conduct a home and termite inspection of the Property prior to the closing of the sale. Atkinson conducted a visual home and termite inspection on September 12, 2005 and issued two

---

[1] Pls' Ex. 3.
[2] Pls' Ex. 2.

2

written reports.[3] The reports set forth the inspector found no visible evidence of wood-destroying organisms and no structural issues, with the exception of visible damage observed of the lower three or four boards of the front gable relating to "wood-decay fungi." The inspection reports do not set forth whether an inspection of the roof was conducted or describe the condition of the roof.

The sale closing was conducted on October 10, 2005 and Plaintiffs moved into the Property shortly thereafter. Sale closing proceeds of $63,991.98 were used to pay off the Debtor's mortgage (Homecomings Financial) encumbering the Property.[4] The Debtors received net closing proceeds of $78,646.48 and used a significant portion of the proceeds to purchase a property located at 9949 Jacaranda Avenue, Clermont, Florida 34711 ("Jacaranda Property").

Plaintiffs, based upon the Debtors' representations in the Disclosure Statement and Sale Contract, believed the Property was in good condition with no structural or latent defects. The Debtors did not inform Plaintiffs, either in the sale documents or verbally, of any structural or latent defects in the Property.

### Collapse of the Roof

Plaintiffs observed a water leak and bubbling plaster in the ceiling of the Property's rear bedroom in December 2007, but did not consider the leak to be a serious issue. They observed mold on the walls and ceiling of the rear bedroom in April 2008. A portion of the roof and ceiling collapsed in the rear bedroom causing extensive damage to

---

[3] Pls' Ex. 4.
[4] Pls' Ex. 6.

3

the rear of and other portions of the Property in July 2008. Plaintiffs vacated the Property in July 2008 because the Property was not habitable.[5]

Plaintiffs examined the roof internally and found multiple layers of shingles, rotted wooden beams and plywood, termite damage, and evidence of repairs. Portions of the wooden beams and plywood were covered with black mold. Rotten beams were nailed together haphazardly with newer beams. It was apparent someone, prior to Plaintiffs' purchase of the Property, had attempted to repair extensive water intrusion and/or termite damage. The repairs did not comply with the Florida building and roofing codes and the necessary building permits were not obtained.

The Property was uninhabitable for approximately three years. Plaintiffs engaged various contractors to repair the Property, which required a complete replacement of the roof, mold remediation, and extensive interior repairs.[6] They spent approximately $65,000.00 on repairs. Plaintiffs moved back into the Property in November 2009.

Plaintiffs instituted in 2008 a Florida State Court civil action against the Debtors, Atkinson, and the Atkinson inspector seeking, among other things, rescission of the Sale Contract, an equitable lien against the Debtors' Jacaranda Property, and damages for their repair costs.

Plaintiffs, in connection with the State Court litigation, conducted depositions of the Debtors.[7] The Debtors had owned the Property for approximately five years when they sold it to Plaintiffs. Mr. Osborne testified there was water leakage in the roof and he opened the roof and found water rot and termite damage. He and his brother attempted to

---

[5] Pls' Ex. 16.
[6] Pls' Exs. 11-15.
[7] Doc. Nos. 21-25.

4

repair the roof in April 2005 before the Debtors placed the Property on the market for sale. Mr. Osborne covered some of the rotten wood with new beams and shingles rather than removing the decayed materials. He installed new plywood on top of existing shingles. He joined new wooden beams to damaged beams.

Mr. Osborne has several years of experience in the home renovation and construction industries, but has no formal roofing experience. He is licensed in Florida to perform handyman services. Neither Mr. Osborne nor his brother is licensed in Florida to repair or install roofs. The Debtors did not obtain the required building permits for the roof repairs. They did not consult with a licensed contractor, architect, or a county building inspector regarding the roof repairs.

The Property did not sustain any damage from wind, hurricane, fire, or other intervening events between when the repairs were made in April 2005 and the roof's collapse in July 2008. The water intrusion, mold infestation, roof collapse and resulting exterior and interior damages suffered by Plaintiffs resulted from the pre-existing latent roof defects and the Debtors' repairs.

### Bankruptcy Case

Debtors filed a Chapter 7 bankruptcy case on June 1, 2009 and the State Court litigation was stayed by the automatic stay of 11 U.S.C. Section 362(a). Plaintiffs filed their Complaint seeking a nondischargeability determination pursuant to 11 U.S.C. Section 523(a)(2)(A) and 523(a)(2)(C). They seek: (i) a non-dischargeable judgment in the amount of $155,000.00 plus interest; (ii) an award of attorneys' fees and costs; and (iii) an equitable lien on the Jacaranda Property.

Plaintiffs indicated on their Adversary Proceeding Cover Sheet their Complaint is based upon 11 U.S.C. Sections 523(a)(2), 523(a)(6), and 727. They pled no basis for a denial of dischargeability pursuant to Section 523(a)(6) and pled no basis for a denial of the Debtors' discharge pursuant to Section 727. Plaintiffs include a request for relief pursuant to 11 U.S.C. Section 523(a)(2)(B) in their post-trial letter (Doc. No. 34). The Complaint does not contain a Section 523(a)(2)(B) count and such relief is due to be denied.

This proceeding does not involve a debt for luxury goods or services incurred within ninety days of the petition date and, therefore, Section 523(a)(2)(C) is inapplicable. This proceeding is solely a Section 523(a)(2)(A) proceeding. No party has objected to discharge pursuant to 11 U.S.C. Section 727 and the Debtors are due to be granted a discharge pursuant to 727(a).

Section 523(a)(2)(A) does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a
> statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Plaintiffs must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action:   (1) Debtors made a false representation with the purpose and intent to deceive Plaintiffs; (2) Plaintiffs relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiffs sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir.

6

1996). Plaintiffs must establish each of the four common law fraud elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. Id.

The creditor's reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. Whether such reliance is justified is determined by a subjective test. In re Vann, 67 F.3d at 281. "Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Id. (quoting W. PAGE KEETON, PROSSER & KEETON ON TORTS § 108, at 751 (5th ed. 1984)). A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

7

*Analysis*

The Disclosure Statement opens with a notice provision stating:

> In Florida, a Seller is obligated to disclose to Buyer all known facts that materially affect the value of the property being sold and that are not necessarily observable. This disclosure statement is designed to assist Seller in complying with the disclosure requirements under Florida law and to assist the Buyer in evaluating the property being considered.

The Debtors made the following representations in the Disclosure Statement:

i. They had no knowledge of termites, dry rot, pests or wood destroying organisms on or affecting any improvements located on the Property or any structural damage to the property by them.

ii. They were not aware of any structural damage which may have resulted from events including, but not limited to, fire, wind, flood, hail, landslide, or blasting, and which may materially affect the value of the Property.

iii. They were not aware of any improvements or additions to the Property, whether by them or others, that have been constructed in violation of building codes or without necessary permits.

The Debtors made conflicting representations in Paragraph 10 of the Disclosure Statement regarding the roof. They represented they were not aware of any roof or overhang defects and that the roof had not leaked since they owned the Property. They, however, indicated actions had been taken to correct leaks and the roof was replaced in April 2005. They stated the roof had not been inspected within the last twelve months. They provided no further explanation as to the condition of the roof or the circumstances regarding its replacement in April 2005.

The Sale Contract is the standard Florida contract approved by the Florida Association of Realtors and the Florida Bar. No riders, addenda, or special clauses,

8

including an "as is" rider, were checked or made a part of the Sale Contract, with the

exception of a Lead-Based Paint Disclosure. The Sale Contract sets forth, in part:

(i)     Seller warrants that the ceiling, roof (including the fascia and
        sofits), exterior and interior walls, foundation, and dockage of the
        Property do not have any visible evidence of leaks, water damage,
        or structural damage . . . .[8]

(ii)    [C]racked roof tiles, curling or worn shingles, or limited roof life
        shall not be considered defects Seller must repair or replace, so
        long as there is no evidence of actual leaks or leakage or structural
        damage, but missing tiles will be Seller's responsibility to replace
        or repair.[9]

(iii)   There are no facts known to Seller materially affecting the value of
        the Property which are not readily observable by Buyer or which
        have not been disclosed to Buyer.[10]

The Debtors knew prior to listing the Property for sale the roof had sustained

extensive water intrusion and termite damage. Mr. Osborne and his brother attempted to

conceal the damage by patching internal areas of the roof, joining new beams and

plywood to rotten wood, and adding multiple layers of shingles and tar paper. Their

repairs were haphazard, violated governing building and roofing codes, and were made

without the proper permits and inspections. Neither Mr. Osborne nor his brother was

qualified to repair the roof.

The repairs were made in April 2005—a month prior to the Debtors' execution of

the Disclosure Statement. The Debtors made the repairs in preparation of placing the

Property on the market for sale. The roof repairs and the internal condition of the roof

were not readily observable.

---

[8] Id. at ¶ N.
[9] Id.
[10] Id. at ¶ W.

9

The Debtors knew the roof had latent material defects when they executed the Disclosure Statement and Sale Contract.  They did not disclose the roof repairs and defective condition of the roof in the Disclosure Statement or in the Sale Contract.  They did not verbally inform Plaintiffs of the roof repairs or defective condition of the roof.

Plaintiffs did not know the true condition of the roof at the closing.  They learned of the latent roof defects when they opened the roof in 2008 to investigate the leaks and mold.  They would not have purchased the Property had they known of the condition of the roof.  The condition of the roof materially affected the value of the Property.

The Debtors had an explicit duty to disclose the roof repairs and the latent material roof defects to Plaintiffs pursuant to Florida State law.  Johnson v. Davis, 480 So.2d 625, 629 (Fla. 1985).  "[W]here the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer."  Id.  A debtor's failure to disclose inherent material defects to a buyer in order to effectuate the sale of real property constitutes a false representation in a Section 523(a)(2)(A) determination.  In re Zeller, 242 B.R. 84, 87 (Bankr. S.D. Fla. 1999).

The Debtors' failure to disclose the true condition of the roof with its extensive water intrusion and termite damage was intentional.  They attempted to conceal the condition of the roof from Plaintiffs and made material omissions and false representations regarding the roof's condition.  Their conduct was intended to deceive Plaintiffs to effectuate the sale of the Property.

The Debtors, through their omissions and materially false statements regarding the condition of the Property in the Disclosure Statement and Sale Contract, made false

representations with the purpose and intent to deceive Plaintiffs. Plaintiffs relied on the Debtors' misrepresentations. Plaintiffs' reliance on the Disclosure Statement and Sale Contract was justified. In re Zeller, 242 B.R. at 87. Plaintiffs sustained a loss as a result of the Debtors' misrepresentations.

Plaintiffs have established by a preponderance of the evidence each of the nondischargeability elements of 11 U.S.C. Sections 523(a)(2)(A).

### Damages and Relief from Stay

Plaintiffs presented conflicting and incomplete information regarding their damages resulting from the Debtors' fraud. They assert in their Complaint they have incurred monetary damages of $155,000.00 and request judgment in that amount, but have failed to delineate how such figure was calculated. The figure appears to be partially comprised of the mortgage payoff of $63,991.98 for Homecomings Financial and $76,353.52 for the Debtors' purchase of the Jacaranda Property. Plaintiffs did not delineate any repair or out of pocket costs in their Complaint.

Plaintiffs testified at trial they have incurred approximately $65,000.00 for out of pocket repair costs. They testified they have received payments totaling approximately $32,000.00 from insurance claims and no further claims are pending. They stated there is no termite inspection bond as a source of recovery and have been unsuccessful in obtaining any recovery against Atkinson or Atkinson's inspector.

The Court directed Plaintiffs to submit a detailed accounting of their out of pocket costs and all insurance recoveries. Plaintiffs submitted a post-hearing letter that fails to detail their costs and recoveries and conflicts with their testimony regarding insurance recoveries. Plaintiffs appear to be seeking monetary damages in excess of the

11

$155,000.00 set forth in the Complaint including the recovery of mortgage payments, taxes, and insurance relating to the Property. Plaintiffs did not include mortgage payments, taxes, or insurance as damages in their Complaint.

Plaintiffs have established no basis for a nondischargeable judgment in the amount of $155,000.00. They, based upon their testimony, have incurred out of pocket repair costs of approximately $65,000.00 and have received insurance claim recoveries of approximately $32,000.00. Their net repair costs are approximately $33,000.00.

Plaintiffs request relief from the automatic stay of 11 U.S.C. Section 362(d) to continue the State Court litigation against the Debtors. This Court has discretion to grant stay relief for cause. 11 U.S.C. § 362(d)(1). Stay relief is due to be granted to allow Plaintiffs to return to the State Court to adjudicate and liquidate their State Court causes of action against the Debtors.

In the event the State Court enters judgment in favor of Plaintiffs and against the Debtors, the portion of such judgment that is nondischargeable pursuant to 11 U.S.C. Section 523(a)(1)(A) shall not exceed $33,000.00, which amount represents Plaintiffs' actual out of pocket repair costs less their total insurance recoveries. In the event the State Court awards Plaintiffs their reasonable attorney's fees and costs, such an award is nondischargeable pursuant to 11 U.S.C. Section 523(a)(1)(A).

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the amount of $33,000.00, representing Plaintiffs' actual out of pocket costs, less Plaintiffs' total insurance recoveries, plus any award of reasonable attorney's fees and costs the State Court may award to Plaintiffs against the Debtors, is **NONDISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A); and it is further

**ORDERED, ADJUDGED and DECREED** that all other indebtedness relating to Plaintiffs' purchase of the Property from the Debtors is **DISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727(a); and it is further

**ORDERED, ADJUDGED and DECREED** that Plaintiffs' request for stay relief is hereby **GRANTED IN PART** pursuant to 11 U.S.C. Section 362(d) to allow Plaintiffs to adjudicate and liquidate their claims against the Debtors in the Circuit Court of the Fifth Judicial Circuit, In and For Lake County, Florida in Blake Barnett, *et al.* v. Paul Osborne, *et al.*, Case No. 2008 CA 4456. In the event the State Court enters judgment in favor of Plaintiffs and against the Debtors, the portion of such judgment that is nondischargeable pursuant to 11 U.S.C. Section 523(a)(1)(A) shall not exceed $33,000.00 and any award of reasonable attorney's fees and costs in favor of Plaintiffs against the Debtors is nondischargeable pursuant to 11 U.S.C. Section 523(a)(1)(A); and it is further

**ORDERED, ADJUDGED and DECREED** that all other relief sought by Plaintiffs in their Complaint, Adversary Proceeding Coversheet, and post-hearing submissions is hereby **DENIED**; and it is

13

**ORDERED, ADJUDGED and DECREED** that a discharge is due to be entered in the Debtors' main case pursuant to 11 U.S.C. Section 727(a) and the Clerk of Court is hereby directed to enter a discharge.

A separate judgment consistent with these findings and conclusions shall be entered contemporaneously

Dated this _____ day of October, 2010.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge

14